IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00090 HG-01 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHASE WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT CHASE WILLIAMS' MOTION TO SUPPRESS (ECF No. 21)**

Defendant Chase Williams moves to suppress evidence seized from a United States Postal Service Priority Mail Express Parcel. Defendant Williams also seeks to suppress evidence found pursuant to a search warrant of his residence following his detention.

Defendant Williams makes three arguments.

First, Defendant contends that Postal Inspectors lacked reasonable suspicion to detain the Subject Parcel.

Second, Defendant argues that the Subject Parcel was retained for an unreasonable length of time.

Third, Defendant claims that the search of his residence is "tainted derivative evidence" that should be suppressed pursuant to the exclusionary rule.

The Court finds that Defendant Williams does not have standing to challenge the search and seizure of the Subject

1

Parcel, because he was neither the sender nor the addressee of the parcel.

Even if Defendant did have standing, the evidence is not subject to suppression because there was no Fourth Amendment violation. Postal Inspectors had reasonable suspicion to detain the Subject Parcel, and the Subject Parcel's retention was for a reasonable length of time.

The search of Defendant's residence did not rely upon the fruit of an unlawful search or seizure.

Defendant Chase Williams' Motion to Suppress (ECF No. 21) is **DENIED.**

## <u>INDICTMENT</u>

Defendant Williams is charged in the **Indictment** filed on June 27, 2018 (ECF No. 13) as follows:

**Count I** for conspiracy to possess with intent to distribute and distribution of 500 grams or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846;

**Count II** for attempting to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; and,

**Count III** for possession with intent to distribute a mixture

or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C).

## PROCEDURAL HISTORY

On June 14, 2018, a criminal complaint was filed against Defendant.  (ECF No. 2).

On June 27, 2018, the grand jury returned the three-count Indictment against Defendant.  (ECF No. 13).

On June 28, 2018, Defendant pled not guilty to Counts 1-3 of the Indictment.  (ECF No. 18).

On August 28, 2018, Defendant filed DEFENDANT WILLIAMS' MOTION TO SUPPRESS EVIDENCE.  (ECF No. 21).

On September 10, 2018, the Government filed UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.  (ECF No. 23).

On September 17, 2018, the Government filed its WITNESS LIST and EXHIBIT LIST.  (ECF Nos. 24, 25).

On September 18, 2018, the Court held a hearing on Defendant's Motion to Suppress.  (ECF No. 28).  The Court found Defendant Williams had no basis for an expectation of privacy in the parcel and therefore lacked standing to challenge the detention and search of the parcel.

At the hearing, the Parties stipulated and agreed to the facts as stated in the Government's three exhibits in order to

allow the Court to reach Defendant's Fourth Amendment challenges to the detention and search of the Subject Parcel. (Id.)

## BACKGROUND

On Thursday, June 7, 2018, United States Postal Inspector Trevor Covert, along with other law enforcement officers, conducted an outbound interdiction at the West Sacramento Processing & Distribution Center in California. (Affidavit of Postal Inspector Brian W. Shaughnessy at ¶ 7, attached to the Application for Search Warrant, as Government Exhibit 2). They identified the Subject Parcel as appearing suspicious.

The Subject Parcel was addressed in handwriting to "Anne Langorio, 572 Kaiola Pl, Kihei, HI 96753." (Subject Parcel Shipping Label, Government Ex. 1). The handwritten return address was "Jennifer Sanchez, 8847 Mandalay Way, Elk Grove, CA 95624." (Id.)

Inspector Covert contacted United States Postal Inspector Brian W. Shaughnessy in Honolulu and immediately mailed the Subject Parcel to him. (Shaughnessy Affidavit at ¶¶ 11-12, Government Exhibit 2)).

Inspector Shaughnessy took possession of the Subject Parcel on Saturday. A canine narcotics detector was not available until Monday. On Monday, canine narcotics detector "Alan" alerted to the presence of the odor of a controlled substance in the Parcel.

(Id. at ¶ 16).

Based on the alert, Inspector Shaughnessy applied for and obtained a federal search warrant to search the Parcel. Inspector Shaughnessy executed the search warrant and found cocaine in the Parcel.

Federal agents then applied for and obtained a second federal search warrant to install a beeper and tracking device in the Parcel. (Affidavit of Drug Enforcement Administration Special Agent Erik W. Klapmeier at ¶¶ 5-7, attached to the Criminal Complaint, Government Exhibit 3).

The Subject Parcel was transferred from the island of Oahu to the island of Maui. A controlled delivery of the Parcel was attempted. The residence was unoccupied. (Id. at ¶ 8). The Postal Inspector left a notice of delivery at the residence.

Later that same afternoon, a postal employee received a telephone call from an unknown male who asked that the parcel be redelivered. (Id.) A second attempt at a controlled delivery of the Parcel was made immediately that afternoon. (Id.)

During the second controlled delivery, a man, later identified as Eduard Rivera, drove up to the residence. (Id. at ¶ 10). Eduard Rivera accepted the Parcel from the undercover Postal Inspector who stated that it was for "Anne Langorio." (Id.) Rivera said, "no, it is for my brother." (Id.) Rivera took possession of the Parcel and took it into the residence.

5

(Id.)

The beeper then emitted a rapid tone, indicating the Subject Parcel was opened. Agents approached the residence, and Rivera was detained in the doorway. (Id.) The agents tracking the beeper knocked and announced "police" and proceeded through the apartment. While in the residence, the agents observed that pieces of packaging from the Subject Parcel were in the living room of the residence. Agents then discovered an internal stairwell from the upstairs residence directly to the ground level where they observed a screened-in window that was pushed out from the inside. (Id.)

Agents were searching the surrounding area when a neighbor advised them that an unknown male had jumped the fence from the residence. (Id. at ¶ 12). The male was later positively identified by the neighbor as Defendant Williams. (Id.) Agents observed Defendant Williams two blocks away from the residence. He was detained without incident. (Id. at ¶ 13).

Federal agents applied for and obtained a third search warrant for Defendant Williams' residence. (Id. at ¶ 17; Mag. No. 18-00629RLP). A search of the residence resulted in officers seizing 86.8 gross grams of cocaine, 406.8 gross grams of marijuana, and paraphernalia including packaging materials, small plastic bags, spoons with cocaine residue, and two small scales.

The agents never found the Subject Parcel with the beeper or

the pseudo-cocaine contents.

## ANALYSIS

## I. Defendant Williams Lacks Standing To Contest The Detention And Search Of the Subject Parcel

The Fourth Amendment to the United States Constitution provides that persons shall be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects against "not all searches and seizures, but unreasonable searches and seizures." Terry v. Ohio, 392 U.S. 1, 8 (1968).

To contest the legality of a search made pursuant to the Fourth Amendment, a defendant must demonstrate that he has a legitimate expectation of privacy in the place or item that was searched. United States v. Davis, 932 F.2d 752, 756 (9th Cir. 1991). A defendant must show an actual subjective expectation of privacy that society is prepared to recognize. Id. The defendant has the burden to establish that his legitimate expectation of privacy in a particular place was violated under the totality of the circumstances. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980).

Letters and other sealed packages are in the general class of effects in which a person may have a legitimate expectation of privacy. United States v. Jacobsen, 466 U.S. 109, 114 (1984). The Ninth Circuit Court of Appeals has explained that the sender

of a package "retains a limited possessory interest in the mailed item." United States v. Hernandez, 313 F.3d 1206, 1209-10 (9th Cir. 2002). The parcel's "addressee" also has a privacy interest because he or she "has a reasonable expectation that the mail will not be detained by postal employees beyond the normal delivery date and time." Id.

Third-parties generally do not have legitimate expectations of privacy for parcels that they neither sent nor were addressed to them. United States v. Notyce, 16-cr-00556JMS, 2017 WL 5137584, *4 (D. Haw. Nov. 6, 2017) (citing United States v. Sheldon, 351 F.Supp.2d 1040, 1043 (D. Haw. 2004)).

Defendant Williams has not established that he had a legitimate expectation of privacy in the Subject Parcel. Defendant was not the sender nor the addressee on the mailing label of the parcel. See Notyce, 2017 WL 5137584 at *5.

There are no material disputes of fact. Defendant Williams does not dispute that he did not mail the Subject Parcel. He does not dispute that his name was not listed on the mailing label. Defendant instead requests that the Court expand the scope of the Fourth Amendment privacy interest in packages to "intended recipients."

Defendant relies on United States v. Hernandez, 313 F.3d 1206, 1210 (9th Cir. 2002). In Hernandez, the Ninth Circuit Court of Appeals stated, "[t]he recipient of a mailed item, on

the other hand, has a reasonable expectation that the mail will not be detained by postal employees beyond the normal delivery date and time.  In other words, an addressee's possessory interest is in the timely delivery of a package."  Id.

Defendant's reliance on the language in Hernandez is misplaced.  In this case, Defendant Williams was not the sender or the addressee on the Subject Parcel.  In Hernandez, the defendant was both the recipient and the addressee listed on the mailed parcel.  Id. at 1208 (finding "[t]he package was addressed to Hernandez").

The language in Hernandez only refers to a "recipient" having a potential privacy interest when he is also the addressee.  Hernandez does not provide a legitimate privacy interest in parcels for a purported "intended recipient." Defendant has not cited a case where a court has found that there is a Fourth Amendment privacy interest in a parcel where the defendant was an "intended recipient."

In United States v. Notyce, 16-cr-00556JMS, 2017 WL 5137584, *4 (D. Haw. Nov. 6, 2017), the United States District Court for the District of Hawaii held that the defendant did not have standing to challenge the detention and search of a parcel, because he "was neither the sender nor the addressee of the package."  The defendant used intermediaries to deliver the parcel to him.  Id. at *5.  The court found that the defendant

9

"did not have a legitimate expectation of privacy in the parcel and therefore does not have standing to challenge its search and detention." Id.

Other federal circuit courts have limited the privacy interest to addressees. See United States v. Stokes, 829 F.3d 47, 52 (1st Cir. 2016) (citing United States v. Smith, 39 F.3d 1143, 1145 (11th Cir. 1994); United States v. Koenig, 856 F.2d 843, 846 (7th Cir. 1988); United States v. Daniel, 982 F.2d 146, 149 (5th Cir. 1999); United States v. Givens, 733 F.2d 339, 341-42 (4th Cir. 1984) (per curiam); United States v. Lewis, 738 F.2d 916, 919-20 & n.2 (8th Cir. 1984)).

Defendant was not the recipient of the parcel in this case. Defendant does not dispute that Eduard Rivera was the person who received the parcel from the Postal Service. (Klapmeier Affidavit at ¶ 10, Government Exhibit 3). Defendant Williams was not the addressee on the Subject Parcel, did not sign for the Subject Parcel, and did not take possession of the Subject Parcel from the Postal Inspector.

Defendant acknowledges that he was not the addressee or the actual recipient of the parcel. Defendant Williams had no expectation of privacy in the parcel. The Court finds Defendant Williams lacks standing to challenge the search and seizure of the Subject Parcel.

## II.  There Was Reasonable Suspicion To Detain The Subject Parcel

The Parties stipulated to the facts contained in the Government's three exhibits in order to allow the Court to reach the other arguments raised by Defendant Williams.

The Court finds the Postal Inspectors had reasonable suspicion to detain the Subject Parcel pending the examination by a narcotics canine.

Caselaw has indicated that United States Postal Inspectors have identified a number of factors that raise the suspicion that a parcel may contain controlled substances or proceeds from the sale of controlled substances.

**The factors include:**

Shipping by Priority Express Mail;

Handwriting the addresses on the mailing labels rather than using typed mailing labels;

Shipping from a known source state;

Shipping to a location to which narcotics have been commonly shipped in recent years;

Paying for the postage in cash;

Providing inaccurate and/or incomplete information on the mailing label, including false names or telephone numbers;

Heavily taping the outside of the package and sealing the seams;

Densely packing the inside of the parcel and packing the narcotics inside multiple envelopes or packages within the parcel;

Vacuum sealing narcotics inside the parcel; and,

Packing strong smelling substances along with the controlled substances in order to mask odors.

United States v. Gill, 280 F.3d 923, 926 (9th Cir. 2002); United States v. Huerta, 655 F.3d 806, 808 (8th Cir. 2011).

## A.    The Subject Parcel Was Suspicious

On Thursday, June 7, 2018, Postal Inspector Trevor Covert and other law enforcement officers conducted a Priority Mail Express outbound interdiction at the West Sacramento Processing & Distribution Center in California.  (Shaughnessy Aff. at ¶ 7).

The Subject Parcel had a number of common indicators that rendered it suspicious based on the Postal Inspectors' experience and training.

First, it was clear from the mailing label that the addresses and identifying information on the Subject Parcel were handwritten.

Second, the Subject Parcel was sent by Priority Express Mail.

Third, the Subject Parcel was shipped from Elk Grove, California, a known source of illegal narcotics.

Fourth, the destination of the Subject Parcel was Kihei, Hawaii, a known place to which narcotics had been shipped in recent years.

Fifth, the Subject Parcel's Priority Express Mail $63.20 postage was paid for in cash.

Sixth, the telephone number listed for the sender of the Subject Parcel was not a working telephone number. A law enforcement officer working with Inspector Covert called the telephone number listed for the sender of the Subject Parcel and received an automated message indicating that it was not a working telephone number.

Seventh, the Subject Parcel was heavily taped on the outside.

**B.    The Initial Detention Of The Subject Parcel By West Sacramento Postal Inspectors Was Reasonable**

Inspector Covert and law enforcement officers at the West Sacramento Processing & Distribution Center had reasonable suspicion to detain the Subject Parcel in light of the characteristics of the package and their own training and experience. United States v. Aldaz, 921 F.2d 227, 229 (9th Cir. 1990) (explaining that postal inspectors may detain a package to conduct an investigation if they have a reasonable and articulable suspicion that it contains contraband or evidence of illegal activity).

The seven indicators Inspector Covert and the other law enforcement officers in the West Sacramento Processing & Distribution Center identified in the Subject Parcel were specific, articulable facts to support reasonable suspicion.

Courts must look to the totality of the circumstances to see

if the detaining officers had a particularized and objective basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002). The determination of reasonable suspicion is fact-specific and the circumstances must be evaluated as they would be understood by those versed in the field of law enforcement. United States v. Cortez, 449 U.S. 411, 418 (1981).

The physical characteristics of a parcel may provide investigators with reasonable suspicion. Hernandez, 313 F.3d at 1211-12; United States v. Colon, 386 Fed. Appx. 229, 231 (3d Cir. 2010). Just as in Hernandez, the physical characteristics of the Subject Parcel here indicated that the shipper may have been attempting to hide his or her identity. In addition, the mailing label was handwritten, the high postage was paid for in cash, and the telephone number for the return address did not function.

Also, just as in Hernandez, "the fact that the package had been mailed from California, a known drug-source state, heightened [the agent's] concern." Id. at 1211. The package was also taped heavily on the outside, which was known to the investigators as a tactic "in order to conceal the scent of the contraband from narcotics detector dogs." Id. The physical characteristics of the Subject Parcel, along with the officers' training and experience, provided reasonable suspicion to detain the package.

The Subject Parcel's individual characteristics may have been innocent in isolation, but when considered as part of the totality of the circumstances, they create a reasonable suspicion. United States v. Palos-Marquez, 591 F.3d 1272, 1278 (9th Cir. 2010) (explaining that an isolated fact's inability to establish reasonable suspicion is not dispositive, as courts consider the cumulative effect of all relevant facts); Huerta, 655 F.3d at 810-11 (finding reasonable suspicion to detain a package based on the totality of the circumstances in light of the officer's specialized training and experience).

These specific, articulable facts, taken together with rational inferences, gave rise to reasonable suspicion that the package contained contraband. United States v. Washington, 967 F.2d 596, *1 (9th Cir. 1992) (finding reasonable suspicion for packages sent via Express Mail that were heavily sealed, with handwritten labels, paid for in cash, sent from known source location to known drug destination cities, with unverified addresses); United States v. Most, 789 F.2d 1411, 1416 (9th Cir. 1986).

## III. The Subject Parcel Was Not Detained For An Unreasonable Period Of Time

### A. The Honolulu Postal Inspector Reasonably Retained The Subject Parcel For Examination By A Narcotics Detector Canine

The Subject Parcel was initially mailed by an unknown person

from Sacramento, California, at approximately 11:00 a.m., Pacific Standard Time, on Thursday, June 7, 2018. (Shipping Label, Government's Exhibit 1).

Approximately five hours later, at 1:37 p.m., Hawaii Standard Time, on Thursday, June 7, 2018, Inspector Covert contacted Inspector Shaughnessy in Honolulu to inform him that he was routing the Subject Package to him for further investigation. (Shaughnessy Affidavit at ¶ 12).

Inspector Covert then immediately mailed the Subject Parcel from West Sacramento, California, to the Postal Inspector's Hawaii location in Honolulu, Oahu. (Id.) The U.S. Postal Inspector's Office for examination of suspicious parcels has one main office for the Hawaiian Islands. The main office is the Honolulu Postal Inspection Agency Office located in Honolulu on the island of Oahu.

On Saturday, June 9, 2018, at approximately 10:00 a.m., Hawaii Standard Time, Inspector Shaughnessy took possession of the Subject Parcel.

Inspector Shaughnessy found three additional factors in addition to the seven observed by the agents in West Sacramento that raised further suspicion that the Subject Parcel contained illegal drugs.

Eighth, Inspector Shaughnessy's close inspection of the Subject Parcel, by gently handling it, revealed there was a

densely packaged item inside the outer box.  The Subject Parcel was also heavily taped.  (Shaughnessy Affidavit at ¶ 13).

Ninth, Inspector Shaughnessy discovered that the names on the mailing label were not associated with the addresses listed. Inspector Shaugnhessy conducted a review of the U.S. Postal Service and law enforcement databases and found that no one by the name of "Jennifer Sanchez" was associated with the return address on the Subject Parcel.  (Id. at ¶ 14).  In addition, no one by the name of "Anne Langorio" was associated with the destination address on the Subject Parcel.  (Id. at ¶ 14).

Tenth, the destination address was also found to be inaccurate.  Inspector Shaughnessy discovered that the destination address was incorrect because "there is no '572 Kaiola Place' in Kihei, Maui; however, there is a '572 Kaiola Street" in Kihei."  (Id.)

Postal inspectors properly retained the parcel before its scheduled delivery time without any Fourth Amendment violation. United States v. Jefferson, 566 F.3d 928, 934-35 (9th Cir. 2009). The Subject Parcel was detained in Sacramento, California, and sent to Honolulu, Hawaii for further investigation before the scheduled delivery date of 3:00 p.m., on Saturday, June 9, 2018.

Enforcing drug laws in remote communities often requires law enforcement to reroute suspicious packages for further investigation.  Lozano, 623 F.3d at 1061.  It took less than two

days for the Subject Parcel to arrive in Honolulu.  The Subject Parcel was received by the Postal Inspector in Honolulu on Saturday, June 9, 2018, at 10:00 a.m., before the scheduled delivery time.  At approximately 10:05 a.m., Hawaii Standard Time, Inspector Shaughnessy secured the Subject Parcel at the Honolulu Postal Inspection Service to await examination by a narcotics detector canine.

The combination of the <u>ten</u> specific factors of the Subject Parcel provided reasonable suspicion to detain the parcel for further inspection by a narcotics detector canine.  <u>United States v. Jefferson</u>, 2007 WL 9717427, *2 (D. Alaska June 8, 2007) (finding there was reasonable suspicion based on the totality of the circumstances to detain the parcel long enough to subject it to examination by a trained drug-detection canine).

### B. There Was No Unreasonable Delay In Delivering The Subject Parcel

There were no narcotics detector canines available over the weekend to examine the Subject Parcel.  (Shaugnhessy Affidavit at ¶ 15).  The next time a narcotics detector canine was available was on Monday, June 11, 2018.

Although Monday, June 11, 2018, was Kamehameha Day, a Hawaii State Public Holiday, at approximately 10:27 a.m., the Subject Parcel was presented for examination to a Honolulu Police Department narcotics detector canine "Alan".  (<u>Id.</u> at ¶ 16).  The

18

examination of the Subject Parcel was conducted on Monday by Honolulu Police Officers.  The canine alerted to the presence of the odor of a controlled substance in the Subject Parcel.  (Id.)

Following the canine alert on Monday morning, Inspector Shaughnessy applied for and obtained a search warrant for the Subject Parcel.  (Application for Search Warrant, Government Exhibit 2; Mag. No. 18-00608RLP).

Inspector Shaughnessy received and then executed the search warrant that same afternoon of Monday, June 11, 2018, in Honolulu, Oahu, Hawaii.  An estimated 1,017 gross grams of cocaine was found in the Subject Parcel.  (Klapmeier Affidavit at ¶ 6, Government's Exhibit 3).

Another search warrant was sought and on Wednesday, June 13, 2018, a second search warrant was obtained.  The second warrant authorized the installation and monitoring of a tracking device and beeper device for the Subject Parcel, and an anticipatory search warrant for the premises where the parcel was to be delivered.  (Id. at ¶ 7; Mag. No. 18-00613RLP).

The Subject Parcel had been transported from the Postal Inspector's Office in Honolulu on the island of Oahu, to the island of Maui.

At approximately 12:35 p.m., on the same date, a United States Postal Inspector, acting in an undercover capacity, attempted a controlled delivery of the Subject Parcel.  The

residence was unoccupied.  (Id. at ¶ 8).  The Inspector left a notice of delivery advising of the attempted delivery.

Later on the afternoon of Wednesday, June 13, 2018, a postal employee received a telephone call from an unknown male asking that the parcel be redelivered.  (Id.)  The undercover Inspector returned to the address for the second attempt at a controlled delivery at approximately 2:15 p.m.  (Id. at ¶ 9).  At approximately 2:17 p.m., Eduard Rivera drove up to the residence and took possession of the Subject Parcel from the undercover Inspector.  (Id. at ¶ 10).

An extended delay between the retention of property and acquisition of a search warrant may violate the Fourth Amendment. United States v. Sullivan, 797 F.3d 623, 633 (9th Cir. 2015); Lozano, 623 F.3d at 1061.

Courts determine reasonableness of a delay by examining the totality of the circumstances surrounding each component of the delay.  Hernandez, 313 F.3d at 1213.  The focus rests on the diligence of law enforcement officials.  United States v. Dass, 849 F.2d 414, 415 (9th Cir. 1988).

The record demonstrates that law enforcement acted diligently.  The canine examination took place within a reasonable time of the parcel's arrival in Honolulu from California.  On the morning of Kamehameha Day, Monday, June 11, 2018, the canine alerted to the presence of narcotics.  The

officers immediately applied for and obtained a search warrant that same Monday.  Cocaine was found in the Subject Parcel upon the execution of the search warrant the same Monday afternoon.

Law enforcement were required to transport the Subject Parcel from Honolulu on the island of Oahu to Kihei, located on the island of Maui.

The Ninth Circuit Court of Appeals has explained that there are reasonable delays that arise for investigations outside the contiguous United States due to the distance, travel, and the availability of narcotics detector canines outside of the United States mainland.  United States v. Aldaz, 921 F.2d 227, 231 (9th Cir. 1990); Hernandez, 313 F.3d at 1212-13.

The time consumed in transferring Defendant's package from California to Honolulu, on the island of Oahu, and then to Kihei, on the island of Maui, was reasonable and "simply reflects the facts of life" in the Hawaiian islands.  See Aldaz, 921 F.2d at 231.  Law enforcement's diligent work included a weekend and a Monday Hawaii State Holiday.  Gill, 280 F.3d at 929; United States v. Ames, 106 F.3d 409, *1 (9th Cir. 1997) (explaining that a "Monday mid-day application for a search warrant based on a late Friday afternoon probable cause was adequately fast").

After obtaining the second search warrant on the morning of Wednesday, June 13, 2018, law enforcement attempted a controlled delivery around 12:35 p.m.  Law enforcement were unable to

deliver the package at 12:35 p.m. because the residence was unoccupied.  There was a request for redelivery.  That same day, law enforcement was successful in delivering the Subject Parcel on the second attempt at 2:17 p.m.

The Subject Parcel was processed, transported, examined, prepared for tracking, transported again, and delivered by the Government in six days.  The length of the Government's retention of the Subject Parcel over a weekend requiring transportation from California to Oahu and then to Maui was reasonable given the totality of the circumstances and the unique factors present in this case.  The diligence and care of the officers was reasonable and did not cause undue delay.  United States v. Gill, 280 F.3d 923, 928-29 (9th Cir. 2002) (finding the six-day delay in delivery in the parcel was reasonable given the diligence of the officers and the investigation over the course of a weekend).

## IV.  The Search Of Defendant's Residence Was Lawful

Defendant has not demonstrated that he suffered a violation of his Fourth Amendment rights.  He does not have standing to challenge the seizure and search of the Subject Parcel.  Even if Defendant had standing, there was reasonable suspicion to detain the package and there was no unreasonable delay in delivery of the Subject Parcel.

Defendant attempts to challenge the search of his residence

based on alleged "tainted derivative evidence." (Motion to Suppress at p. 9, ECF No. 21). Defendant argues "[t]he search of Defendant Williams residence would never have happened but for the illegal detention of the parcel to begin with." (Id.)

The search of the Defendant's residence was conducted pursuant to a third search warrant obtained by law enforcement on Wednesday, June 13, 2018. Law enforcement obtained three different search warrants in this case.

Following the execution of the second search warrant, Defendant Williams was detained two blocks from his residence. (Klapmeier Affidavit at ¶ 13). Law enforcement discovered Sirchie powder on Defendant's hands. (Id. at ¶ 15). Pieces of packaging from the Subject Parcel were in the living room of the residence. (Id. at ¶ 14). The pseudo-cocaine packaging was not located in the living room or on the path of where Defendant Williams had fled. (Id.)

Law enforcement then obtained the third and final search warrant in order to search his residence. (Klapmeier Affidavit at ¶ 17, Government's Exhibit 3; Mag. No. 18-00629RLP).

The evidence obtained from Defendant's residence is not subject to the exclusionary rule. The exclusionary rule is a judicially created remedy. It results in the suppression from the government's case in chief the evidence which has been derived from an illegal search or seizure under the Fourth

Amendment. <u>Davis v. United States</u>, 564 U.S. 229, 236 (2011). The indirect product of an unlawful search or seizure may be excluded. <u>United States v. Perea-Rey</u>, 680 F.3d 1179, 1185 (9th Cir. 2012).

Here, the search of the residence did not rely upon the fruit of any unlawful or unconstitutional search or seizure of the Subject Parcel. The exclusionary rule is not applicable.

Defendant has not challenged the validity of the third search warrant authorizing the search of Defendant's residence. The United States Supreme Court has explained that evidence obtained pursuant to a facially-valid search warrant is admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant. <u>United States v. Leon</u>, 468 U.S. 897, 912 (1984). There is no evidence that the officers had any reason to doubt the validity of the third search warrant issued by the Magistrate Judge to search Defendant's residence.

//

//

//

//

//

//

//

## CONCLUSION

Defendant Chase Williams' Motion to Suppress (ECF No. 21) is
**DENIED.**

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, October 16, 2018.



Helen Gillmor
United States District Judge